IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS G.,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*,<br><br>Respondents. | Civil No. 1:26-cv-07190-MWJS<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>A# 094-406-453 |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Carlos G.[1] petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner, a native and citizen of El Salvador, entered the United States without inspection approximately 26 years ago at an unknown time and place. Dkt. No. 1, at pg. 2; Dkt. No. 7-3, at pg. 2. On April 4, 2001, Petitioner applied for Temporary Protected Status (TPS), but that application was denied for reasons the record does not make clear. Dkt. No. 7-1, at pg. 2. On May 8, 2001, he reapplied for TPS, and this time, his application was approved. Dkt. No. 7-3, at pg. 2. From July 6, 2002, until May 4, 2011, Petitioner held TPS, which endowed him with certain privileges, including the ability to

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

engage in lawful employment and a prohibition on detention for civil immigration purposes. *See* 8 U.S.C. § 1254a.

But in 2011, United States Citizenship and Immigration Services withdrew its approval of Petitioner's TPS status "because of [his] criminal record." Dkt. No. 7-3, at pg. 2. The only criminal history which the record reflects for the relevant time period consists of a 2003 conviction for "Fail[ure] to Surrender Drivers License," a "Traffic Offense" under Florida law, and a 2004 conviction for "Knowingly Driving with a Suspended License," a "Moving Traffic Viol[ation]" under Florida law. Dkt. No. 7-2, at pg. 2; Dkt. No. 7-3, at pg. 3. Petitioner was served notice of the revocation of TPS by mail on May 4, 2011, *see* Dkt. No. 7, at pg. 1, and his subsequent attempts to re-register for TPS—including by filing an "Appeal or Motion" in May 2011 and by filing a new application in March 2018—were subsequently denied. Dkt. No. 7-1, at pgs. 2-3. And after Petitioner lost his TPS status in 2011, the government issued him a Notice to Appear in 2013. Dkt. No. 7, at pg. 1.

In the quarter-century since Petitioner first applied for TPS, he has raised two children who are United States citizens and has worked to support his family as their sole provider. Dkt. No. 1, at pg. 2. His children's mother is suffering from cancer and relies on Petitioner's income to pay for her chemotherapy. *Id.* Petitioner has also had three additional encounters in which law enforcement has suspected him of violating Florida's traffic laws during that decadeslong timespan—once in April 2015, when he

was charged with knowingly driving while his license was suspended; once in July 2023, when he was charged with having no valid driver's license; and once in December 2023, when he was again charged having no valid driver's license and having a tag not assigned to his vehicle. Dkt. No. 7-2, at pgs. 3-4. The record does not reflect the disposition of any of these charges.

On August 5, 2026, while Petitioner was on his way to work, officers from United States Immigration and Customs Enforcement (ICE) stopped Petitioner's vehicle after determining that the "vehicle was associated with a non-immigrant from El Salvador." Dkt. No. 7-1, at pg. 2. At that point, more than 15 years had elapsed since the expiration of Petitioner's most recent TPS status. ICE officers took Petitioner into custody, and he has remained in immigration detention ever since.

Petitioner now invokes this court's habeas jurisdiction, contending that his detention violates his rights under the Due Process Clase of the Fifth Amendment. Dkt. No. 1, at pg. 12. This court and others have granted relief in cases analogous to this one. *See, e.g.*, *Machuca v. Warden, Cal. City Immigr. Processing Ctr.*, No. 1:26-cv-05119, 2026 WL 2130247 (E.D. Cal. July 23, 2026); *Rivas Velasquez v. Warden*, No. 1:25-cv-1818, 2026 WL 494475 (E.D. Cal. Feb. 23, 2026); *Majano Mendoza v. Andrews*, No. 1:26-cv-01976, 2026 WL 747344 (E.D Cal. Mar. 17, 2026). The court has again considered these precedents and concluded that they reached the correct result. To resolve this case, therefore, the court

need only determine whether there is any factual or legal basis to distinguish those prior decisions.

The court issued an Order to Show Cause, calling on Respondents to identify "any factual or legal issues in this case that render it distinguishable from prior orders" such as the ones listed above. Dkt. No. 6. The court thanks Respondents for their timely and candid response. Dkt. No. 7. In it, they clarify that Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) or § 1226(c); that there is no record of Petitioner being previously detained or released by immigration authorities; and that Petitioner did not hold TPS status when he was detained by ICE on August 5, 2026, and has no currently pending applications for TPS. *See id.* at pgs. 1-2. And although the government recognizes that "numerous Federal Courts within the Ninth Circuit . . . have recognized a constitutionally protected liberty interest in the conferral of TPS," including in cases like *Machuca*, *Rivas Velasquez*, and *Majano Mendoza*, Respondents "respectfully disagree[]" with the decisions of those courts. Dkt. No. 7, at pg. 2 (citing *Gonzalez v. Santacruz*, No. 2:26-cv-08978, 2026 WL 2675864, at *4 (C.D. Cal. Sept. 11, 2026) (collecting cases recognizing "a constitutionally protected liberty interest in the conferral of TPS")).

The court appreciates Respondents' position, but their response does not offer any basis for the court to conclude that there "are any factual or legal issues in this case that render it distinguishable from prior orders such as the ones listed above and justify

denying the Petition." *See* Dkt. No. 6. As this court has explained in other contexts, when "immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration, that reflects the government's decision *not* to detain Petitioner in the first place and vests the same liberty interest as a prior detention and release." *Norberto C.M. v. Warden, Cent. Valley Annex*, No. 1:26-cv-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026) (cleaned up); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3-4 (E.D. Cal. June 25, 2026). And as other courts have persuasively explained on many prior occasions, that rationale can apply in the TPS context as well. *See, e.g., Machuca*, 2026 WL 2130247 (finding a liberty interest for a petitioner who possessed TPS status for nine years and remained at liberty for nearly thirteen years after its expiration); *Rivas Velasquez*, 2026 WL 494475 (same for a petitioner who possessed TPS for nearly twelve years and remained at liberty for one year after its expiration); *Gonzalez*, 2026 WL 2675864 (same for a petitioner who possessed TPS for 24 years and remained at liberty for one year after its expiration). After all, the grant of TPS status can "represent[] a determination by the Government" that a noncitizen is "neither a flight risk nor a danger to the community," and the "mere fact that Petitioner's TPS has expired does not, standing alone, show that he has suddenly become a danger to the community or flight risk—especially given the government's decision to allow him to remain at liberty" for more than fifteen years

after the expiration of TPS. *See Pedro M.T.M. v. Cal. City Corr. Ctr.*, No. 1:26-cv-04862-MWJS, 2026 WL 1983261, at *1 (E.D. Cal. July 8, 2026). And here, the record does not reflect—and the government has not argued—any facts that would suggest that Petitioner has suddenly become a danger to the community or a flight risk.

Given the lack of any factual or legal issues in this case that would distinguish it from the prior orders that this court has found persuasive, IT IS HEREBY ORDERED that the petition for writ of habeas corpus (Dkt. No. 1) is GRANTED, for the reasons stated in those prior orders. Respondents are ORDERED to immediately release Petitioner Carlos G. (A# 094-406-453) from their custody. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have their counsel present. This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, or in the event exigent or urgent circumstances arise that justify arresting and detaining Petitioner before pre-deprivation process can be provided.

The Clerk of Court is DIRECTED to close this case and enter judgment for Petitioner. This order resolves all pending motions.

IT IS SO ORDERED.

DATED: September 17, 2026, at Honolulu, Hawai‘i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge